IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT M. MUMMA, II,** | : |
| Plaintiff | : Civil No.: 1:09-CV-1447 |
| v. | : |
| **HIGH-SPEC, INC.; BARBARA McK. MUMMA; LISA MUMMA MORGAN; JAMES L.S. BOWDISH; and KIM COMPANY,** | : Judge Sylvia H. Rambo |
| Defendants | : |

# **M E M O R A N D U M**

The captioned case, characterized as a shareholder's derivative action, was filed by Plaintiff Robert M. Mumma, II ("Robert"), against Defendants Barbara McK. Mumma ("Barbara") and Lisa Mumma Morgan ("Lisa"), their attorney James L.S. Bowdish, and two defunct closely-held corporations—the Kim Company, and High-Spec, Inc. ("High-Spec"). This case is the latest in a family feud spanning more than two decades and involving state and federal courts in Pennsylvania and Florida. Robert's case involves a collection of facts patched together in a Frankenstein-like gallimaufry of the various cases filed by and between these family members. Before the court are motions to dismiss filed by Defendant James Bowdish, (Doc. 4), and High Spec, Barbara, Lisa, and Kim Company, (Doc. 7), respectively.

While the court is required to take every fact pled in Robert's complaint as true, the court is faced with the somewhat unique situation where a plaintiff has made statements, which he has labeled as "facts," that are directly contradicted by documents that are matters of public record. Of course, federal pleading is not

alchemy whereby a plaintiff can assert whatever selective version of events he wishes in a complaint and it simply becomes true because it is listed as a "fact." Nonetheless, for the purposes of deciding this motion it is not necessary, nor permissible, for the court to judge Robert's version of reality. Even if everything that Robert alleges is true, the court finds that his claims are barred by the statute of limitations. The court makes this finding based on the facts as alleged in his complaint, as well as matters that are indisputably part of the public record. Accordingly, the court will first set out those matters that are part of the public record, and will then address the facts as alleged in Robert's complaint.

I.    **Background**

The court takes judicial notice of the following facts.[1] On April 2, 1986, Robert M. Mumma, ("Robert, Sr."), the paterfamilias of the Mumma family, died testate. (Doc. 11-2, *Mumma v. Mumma*, No. 66 Equity 1988, slip. op. ¶ 1 (C.P. Mar. 24, 1992)(Sheely, P.J.)("66 Equity 1988").) Included in Robert Sr.'s estate was a company called the Kim Company, which was partially owned by Pennsylvania Supply Company, as well as other shareholders, including Robert, Barbara, and Lisa. (*Id.* ¶¶3b, 3f.) For reasons that are irrelevant to the proceedings

---

[1] The court takes judicial notice of these facts not for their truth *per se*, but for the timing of the decisions of the Pennsylvania and Florida courts mentioned in Part I, above. The existence of these judicial decisions is relevant to determining when the causes of action asserted in this case first arose. Morever, the opinions relied on by the court are not subject to a reasonable dispute concerning their authenticity, and were mentioned by Robert in his complaint. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("[O]n a motion to dismiss, [a court] may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.") It is the existence of these opinions that forms the basis of Robert's claims. The court understands that the parties vigorously dispute whether Robert's version of the facts can withstand any scrutiny, and that Defendants have asserted both res judicata and collateral estoppel as grounds for dismissal of the instant case, for the purposes of this motion, however, the court is bound to accept Robert's version of the facts as true. To do otherwise would require the court to convert Defendants' motions to ones for summary judgment. *See* Fed. R. Civ. P. 12(d).

presently before the court, the shareholders of the Kim Company decided to dissolve and liquidate the company. The assets of the Kim Company were transferred to a tenants-in-common agreement called MRA I, which was signed by Robert and others on December 19, 1986. (*Id.* at ¶ 37.) In addressing the effect of MRA I, Judge Sheely concluded in 66 Equity 1988 that " MRA I . . . [was] validly executed on December 19, 1986." (*Id.* at p. 23.)

        The other half of the story involves a Florida corporation called High-Spec that was 50% owned by Robert and 50% owned by Robert, Sr. *See Mumma v. Mumma*, 780 So.2d 1001, 1002 (Fla. Dist. Ct. App. 2001). After Robert, Sr.'s death, Barbara and Lisa, as executors of Robert, Sr.'s estate, filed a complaint seeking dissolution of High-Spec. They asserted that High-Spec was a deadlocked corporation, and that Robert had improperly conveyed real estate owned by High-Spec to himself for no consideration. *Id.* In 1993, a Florida trial court entered a partial final-judgment finding that Robert had illegally distributed property to himself, and that he was liable to High-Spec for $450,000 plus prejudgment interest. *Id.* The Florida trial court dissolved High-Spec. *Id.* at 1003. The court also found that High-Spec owed MRA I $415,229.28. (Doc. 10-3, *Mumma v. Mumma*, No. 89-503 CA, slip op. ¶ 3B (Fla. Cir. Ct., Jul. 26, 1993).) This amount stems from a loan that was made by the Kim Company to High-Spec in 1985, and is central to the allegations in the litigation presently before the court. The amount owed by High-Spec to MRA I was later reduced to $330,320.91 by an order granting in part and denying in part Robert's motion to alter and amend the judgment. (Doc. 10-5, *Mumma v. Mumma*, No. 89-503 CA, slip op. ¶ 3(b) (Fla. Cir. Ct., Feb. 28, 1994).) Following various appeals, on February 17, 2006, the Florida Circuit Court entered an amended final judgment. (Doc. 10-10, *Mumma v. Mumma*, No. 89-503 CA, slip op., (Fla. Cir. Ct., Feb. 16, 2006). Specifically, the court reaffirmed its earlier

judgment that High-Spec was required to pay MRA I, but it again modified the amount to a new amount of $330,329.51. (*Id.*, slip op. ¶ 25(B).) In that order, the Florida Circuit Court also appointed a receiver to wind-down, pay the debts and obligations of High-Spec, and distribute its assets. (*Id.*, ¶ 27(a).) Although various aspects of the Florida Circuit Court's order remain on appeal with the state appellate courts in Florida, *the amount due* to MRA I is not on appeal. On April 28, 2009, the Florida Circuit Court issued an order requiring the receiver to pay to MRA I $330,320.91[2] "as soon as possible." (Doc. 10-15, *Mumma v. Mumma*, No. 89-503 CA, slip op. at order (Fla. Cir. Ct., Apr. 28, 2009).) According to Robert, this latest order—requiring the receiver to pay High-Spec as soon as possible—is now on appeal. (Doc. 1, ¶ 17.)

With this background in mind, all of which the court will consider in ruling on Defendants' motions to dismiss because it comes from sources that are unquestionably a part of the public record, *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"), the court now turns to the allegations made by Robert in his complaint.

Robert alleges in his complaint that, on September 3, 1985, Kim Company loaned $184,135.34 to High-Spec, which it has never repaid. (Doc. 1, ¶ 14). Robert alleges that the "Kim Company has never been a party to the Florida litigation, has never received notice and an opportunity to be heard about its rights . . . and has never been permitted to challenge the validity of MRA I." (*Id.* ¶ 18.)

---

[2] It is unclear why this amount is different than the February 16, 2006 amount and consistent with the February 28, 1994 amount. Whatever the reason, the difference between the amounts ordered payable by High-Spec to MRA I is only $8.60.

Robert contends that both Barbara and Lisa "acted fraudulently in the creation of MRA I," and that the documents submitted by them to support their claims of control of Kim Company "were forgeries and constituted fraud on the Courts." (*Id.* ¶¶ 19-20.) Specifically, Robert avers that Barbara and Lisa "failed to produce an original of the [MRA I agreements] allegedly signed by the parties and which Judge Sheely found to be 'binding' on Plaintiff," and that although MRA I appears to bear his signature, that he never signed it. (*Id.* ¶¶ 22-23.) Robert asserts that he "first confirmed the fraudulent forgeries in December 2005, when he found the original documents." (*Id.* ¶ 27.) Ultimately, Robert contends that "there was never any valid and enforceable agreement that the Kim Company assets (including but not limited to Kim Company's loan to High-Spec, Inc.) were or had been transferred to MRA I, and any testimony or evidence to that effect was based on fraudulent forgeries." (*Id.* ¶ 28.)

Robert asserts that Defendants Lisa, Barbara, and James Bowdish, their current attorney in the Florida litigation, induced the court to use its state's powers of legal compulsion to deprive the Kim Company of its property interest in the debt owed to it by High-Spec. (*Id.*, ¶ 31), and that these actions have or will deprive the Kim Company of its property rights without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution. (*Id.* at ¶ 38.) Robert also alleges that Defendants have engaged in a civil conspiracy to deprive the Kim Company of its property interest, (*Id.* ¶ 39), and that they tortiously interfered with High-Spec's contractual obligation to repay the loan to the Kim Company. (*Id.* ¶ 40.)

### B. Procedural History

Robert filed his complaint on July 27, 2009. (Doc. 1.) Presently before the court are: (1) Defendant Bowdish's motion to dismiss, (Doc. 4); and, (2)

Defendants High-Spec, Kim Company, Barbara McK. Mumma, and Lisa Mumma Morgan's motion to dismiss, (Doc. 7). On September 9, 2009, Robert filed his brief in opposition to Defendant Bowdish's motion to dismiss, (Doc. 14), and, on September 21, 2009, filed his brief in opposition to the other Defendants' motion to dismiss. (Doc. 17.) Defendants filed their reply briefs on September 15, 2009, (Doc. 15), and September 28, 2009. (Doc. 21.) On November 11, 2009, Robert filed a notice of supplemental authority. (Doc. 22.) Defendants' motions are ripe for disposition.

## II. <u>Legal Standard</u>

When presented with a motion to dismiss for failure to state a claim, the court is required to conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, "the factual and legal elements of the claim should be separated," the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* Second, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247,252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified

only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

**III.		Discussion**

In his complaint, Robert alleges that Defendants Barbara and Lisa, in concert with Defendant Bowdish, their attorney, deprived the Kim Company of its property—the right to receive repayment of the loan to High-Spec—without due process of law, and that they are liable pursuant to 42 U.S.C. § 1983 for violations of the Fifth and Fourteenth Amendments to the United States Constitution. Robert also asserts that Defendants engaged in a civil conspiracy to deprive the Kim Company of these federal due process rights, and that Defendants tortiously interfered with High-Spec's obligation to repay the loan to Kim Company.

Defendants Barbara, Lisa, High-Spec, and Kim Company move to dismiss Robert's complaint on four bases: (1) lack of subject matter jurisdiction; (2) failure to state a claim upon which relief can be granted; (3) the claims are barred by the doctrines of collateral estoppel and res judicata; and, (4) the claims are time barred by the applicable statute of limitations. Defendant Bowdish moves to dismiss Robert's complaint on three bases: (1) lack of personal jurisdiction over Bowdish; (2) the claims are barred by the statute of limitations; and, (3) the claims fail to state a cause of action upon which relief can be granted. Robert, of course, contends that each of Defendants' arguments fails, and that his complaint is well-pled.

Based on its review of the facts pled by Robert, and matters of public record, the court concludes that Robert's claims are barred by the applicable statute of limitations. While there are multiple other bases upon which the court could rest its decision, including the fact that, even if timely made, Robert's claims fail to state

a claim upon which relief can be granted because the claims are barred by the doctrines of collateral estoppel and res judicata, to do so would be overkill.

While ordinarily a statute of limitations defense cannot be raised by way of a Federal Rule of Civil Procedure 12(b)(6) motion, the Third Circuit has noted that an exception is made where the complaint on its face demonstrates non-compliance with the limitations period.[3] *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994). Under federal law, the statute of limitations begins to run, when the plaintiff "knew or should have known of the injury upon which [the] action is based." *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998) (section 1983 action). Here, Robert's complaint asserts three separate causes of action, each of which is subject to a two-year statute of limitations,[4] and each of which was untimely filed.

---

[3] Here, the court relies not only on the allegations made in Robert's complaint but also matters that are indisputably part of the public record, namely the Cumberland County Court of Common Pleas decision in 66 Equity 1988 and the Florida Circuit Court's opinion in *Mumma v. Mumma*, No. 89-503 CA. Since it is permissible for the court to consider matters of public record, *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) and *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007), in deciding a 12(b)(6) motion generally, the court finds that it is permissible to consider this evidence along with Robert's factual allegations to determine whether a claim is time-barred. Here, Robert's complaint makes specific reference to the cases of which this court takes judicial notice. Since Robert's complaint relied on these two cases, it is permissible for the court to "examine the decision[s] to see if [they] contradict[] the complaint's legal conclusions or factual claims." *See S. Cross Overseas Agency, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 427 (3d Cir. 1999) (citing *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998); *see also Iacpaoni v. New Amsterdam Cas. Co.*, 379 F.2d 311, 311-12 (3d Cir. 1967) (to resolve a 12(b)(6) motion a court may properly look at previous litigation referred to in the complaint). While it would be impermissible for the court to consider facts that are not referenced in Robert's complaint without first converting Defendants' motions to motions for summary judgment per Fed.R.Civ.P. 12(d), because Robert's claims depend upon actions that occurred in 66 Equity 1988 and the Florida litigation, it is perfectly appropriate for the court to consider whether the activity in those cases should have put Robert on notice of when the causes of action he alleges here began to accrue.

[4] Actions brought pursuant to 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued. *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). In Pennsylvania, that period is two years. *Sameric Corp.*, 142 F.3d at 599. Furthermore, in Pennsylvania the statute of limitations for conspiracy is the same as that for the

(continued...)

The court will start its analysis with Section 1983, which is not in and of itself a source of substantive rights, "but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9 (1999) (internal quotation omitted). To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). Putting aside the question of whether Defendants acted under color of state law—a point that is vigorously contested by the parties—the court will look at the constitutional violations alleged by Robert.

Robert's federal claim is based on his belief that Defendants deprived the Kim Company of its property rights in the proceeds of the loan that it made to High-Spec in violation of the Fifth and Fourteenth Amendments. Specifically, Robert asserts that Barbara and Lisa forged his signature on the MRA I agreement at some point prior to the time that it was submitted to Judge Sheely in the 66 Equity 1988 case. That case was heard by Judge Sheely on March 4-6, and 13, 1991. (*See* Doc. 11-2, *Mumma v. Mumma*, No. 66 Equity 1988, slip op. at 1 (C.P. Mar. 24, 1992) (Sheely, P.J.).) According to Robert, the result of this fraud was that Judge Sheely was induced to conclude that MRA I was validly executed, and that the

---

⁴(...continued)
underlying action which forms the basis of the conspiracy. *Kingston Coal Co. v. Felton Mining Co.*, 690 A.2d 284, 287 n. 1 (Pa. Super. Ct. 1997). Thus, the two-year limitation period for Robert's alleged § 1983 claims applies to his conspiracy claims. Finally, a two-year statute of limitations, as set forth in 42 Pa. Cons. Stat. Ann. § 5524(3), applies to claims of tortious interference with a contractual relationship. *See Bender v. McIlhatten*, 520 A.2d 37, 39-40 (Pa. Super. 1987) (42 Pa. Cons. Stat. Ann. § 5524(3) governs tortious interference with contract rights); *accord Mazzanti v. Merck and Co.*, 770 F.2d 34, 35 (3rd Cir.1985).

assets of the Kim Company were validly transferred to MRA I. Robert then asserts that this fraud permitted Defendants to effectuate another fraud involving the authority of the Florida Circuit Court. Specifically, that Defendants induced the Florida Circuit Court to use its authority to award a judgment of over $300,000 to MRA I that should have been awarded to Kim Company based on the loan from Kim Company to High-Spec. In his complaint, Robert states that he "first confirmed the fraudulent forgeries in December 2005 when he found the original documents." (Doc. 1 at ¶ 27.)

Accepting Robert's version of these events as true, he knew or should have known all of the facts needed to establish his constitutional claims no later than 2005, and most likely much earlier. Judge Sheely issued his first ruling in 66 Equity 1988 on March 24, 1992. In that ruling he found that "MRA I . . . w[as] validly executed on December 19, 1986." (Doc. 11-2, *Mumma v. Mumma*, No. 66 Equity 1988, slip op. ¶ 1 (C.P. Mar. 24, 1992) (Sheely, P.J.).) In 1993, after the ruling in 66 Equity 1988 concluding that MRA I effectively replaced Kim Company as a legal entity, the Florida Circuit Court, in litigation commenced by the Defendants in this case, found that High-Spec owed MRA I $415,229.28 for the 1985 loan from Kim Company to High-Spec. (*See* Doc. 10-3, *Mumma v. Mumma*, No. 89-503 CA, slip op. ¶ 3B (Fla. Cir. Ct., Jul. 26, 1993).) That amount was later corrected and reduced to $330,320.91 by an order granting in part and denying in part Robert's motion to alter and amend the judgment. (Doc. 10-5, *Mumma v. Mumma*, No. 89-503 CA, slip op. ¶ 3(b) (Fla. Cir. Ct., Feb. 28, 1994).)

These two factual developments—the alleged forgeries of the MRA I agreement resulting in Judge Sheely's decision in 66 Equity 1988, and the Florida Circuit Court's decision to award a judgment to MRA I rather than the Kim Company—were the necessary predicates to Robert's alleged constitutional

11

deprivations and were established at the latest in 1994—fifteen years before he filed his complaint in this case. Even assuming, as Robert alleges in his complaint, that he did not become aware of the forgeries until December 2005, (*See* Doc. 1, ¶ 27), the statute of limitations would have expired in December 2007, well before Robert commenced this action in July 2009.

Robert's state law claims suffer from the same timing problems as his federal claims. To establish a claim for tortious interference with a contractual relationship, Robert must plead: (1) the existence of a contractual relationship, (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship, (3) the absence of a privilege or justification for such interference, and (4) damages resulting from the defendant's conduct. *Hennesy v. Santiago*, 708 A.2d 1269, 1278 (1998) (citations omitted). Here, taking Robert's averments of fact as true, the contractual relationship between High-Spec and the Kim Company was formed in 1985; any intent by Defendants to harm the contractual relationship between Kim Company and High-Spec would have occurred at the time that 66 Equity 1988 and the Florida litigation were commenced—the late 1980s or early 1990s; there was no privilege that would justify Defendants' allegedly fraudulent conduct; and, the Kim Company was damaged, at the latest, when the first order was entered by the Florida Circuit Court awarding a judgment to MRA I rather than to the Kim Company. Thus, this cause of action first accrued in 1994 or, at the latest in December 2005 when Robert alleges that he discovered the forgeries. The same is true for Robert's civil conspiracy claim.

In Pennsylvania, "to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common

purpose; and (3) actual legal damage." *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-988 (Pa. Super. Ct. 1997) (citation and internal quotations marks omitted) (cited in *Allegheny General Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 446 (3d Cir. 2000)). As with his other claims, all of the elements of this claim were met in 1994 or, at the latest, 2005.

Robert attempts to avoid the imposition of the statute of limitations by asserting that his claims were timely made under the theory that Defendants' actions are a continuing violation. The continuing violations doctrine, an equitable exception to the statute of limitations requirement, permits a plaintiff in a civil rights care, under certain circumstances, to raise claims that otherwise would be barred by the statute of limitations. As explained by the Third Circuit:

> [W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.

*Brenner v. Local 514, United Broth. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991). In order to determine whether the doctrine should be invoked, courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanency-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. *Cowell v. Palmer*, 263 F.3d 286, 292 (3d Cir. 2001). The focus of the continuing violations doctrine is on affirmative acts of the defendants. *Id.* at 293. Moreover, the doctrine "does not apply when [a

plaintiff] [is] aware of the injury at the time that it occurred." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n. 6 (3d Cir. 2003).

The continuing violations doctrine is not applicable in this case based on the facts as alleged by Robert in his complaint and matters of public record. Although Robert's complaint alleges that the latest action in this case occurred in April of 2009 when Defendants petitioned the Florida Circuit Court to have the receiver pay MRA I money from the assets of High-Spec, this was not a new violation of the injury complained of by Robert. Instead, it is simply the perpetuation of the original violation of due process alleged by Robert—the forgery of the MRA I agreement and the Florida court's original 1994 judgment. As stated previously, Robert was aware of these injuries at the latest in 2005.[5] As such, he cannot claim that the continuing violations doctrine tolls the statute of limitations. *See Morganroth, supra.*

Thus, it is clear, from the averments made in Robert's complaint, as well as those matters which are indisputably part of the public record, both of which the court may consider in deciding a motion to dismiss, that Robert's claims are time barred. At the very latest, Robert should have initiated this case in December 2007, instead the case was filed in July 2009. Robert's case is untimely and his claims are barred as matter of law.

---

[5]It makes no difference that this case is characterized as a shareholders derivative suit and that Robert is suing on behalf of the Kim Company. Based on the allegations contained in the complaint, and the matters of public record, the latest that anyone should have been aware of the claims raised by Robert in this case is 2005. The statute of limitations begins to run, when the plaintiff "knew or ***should have known*** of the injury upon which [the] action is based." *Sameric Corp.*, 142 F.3d at 599 (emphasis added). Here, taking the facts as pled by Robert as true, he actually knew by no later than 2005 that Defendants were depriving the Kim Company of its due process rights. As a shareholder, he could have, but did not, take action on behalf of the Kim Company at that time, or, at the latest, by 2007.

14

**IV.** **Conclusion**

While Defendants have raised other grounds to dismiss Robert's complaint—many of which have merit—the court is not inclined to spill more ink on this case than has already been spilt over nearly two decades. The claims that Robert raises in his complaint, even if true, are time-barred because he failed to exercise his right to sue within the applicable limitations periods. Plaintiff will not be permitted an opportunity to amend his complaint because doing so would be futile. The court will issue an appropriate order granting Defendants' motions and dismissing Robert's complaint with prejudice as to all parties.

s/Sylvia H. Rambo<br>United States District Judge

Dated: December 2, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ROBERT M. MUMMA, II,**

    **Plaintiff**

    v.

**HIGH-SPEC, INC.; BARBARA McK. MUMMA; LISA MUMMA MORGAN; JAMES L.S. BOWDISH; and KIM COMPANY,**

    **Defendants**

Civil No.: 1:09-CV-1447

Judge Sylvia H. Rambo

# **O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT:**

(1) Defendant James L.S. Bowdish's motion to dismiss Plaintiff's complaint, (Doc. 4), is **GRANTED**;

(2) Defendants High-Spec, Inc., Barbara McK. Mumma, Lisa Mumma Morgan, and the Kim Company's motion to dismiss Plaintiff's complaint, (Doc. 7), is **GRANTED**;

(3) Plaintiff's complaint is **dismissed with prejudice** as to all parties, and the clerk of court shall close the case.

                                                                 s/Sylvia H. Rambo
                                                          United States District Judge

Dated: December 2, 2009.